UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
VATHSALA DEVI and                                           :
SEETHARAM SIVAM,                                            :
                                                            :
        Plaintiffs, :   11 Civ. 6675 (JPO)
                                                            :
    -against-     :   MEMORANDUM
                                                            :   OPINION AND ORDER
SHAVENDRA SILVA,                                            :
                                                            :
        Defendant. :
-------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

  Plaintiffs in this action are two Sri Lankan nationals who have filed suit on behalf of their deceased relatives, alleged to be victims of torture and wrongful killing by the Sri Lankan military. Defendant is the Deputy Permanent Representative of Sri Lanka to the United Nations, who served as a commander in the Sri Lankan Army. Plaintiffs seek relief pursuant to the Alien Tort Claims Act and the Torture Victims Protection Act of 1991, as well as common law and international law.

  Defendant has moved to dismiss this action on the ground of diplomatic immunity. For the reasons that follow, Defendant's motion is granted.

**I. Background**

  **A. Factual Allegations**

  The following factual allegations are drawn from the Complaint and are presumed true for purposes of this motion.

  This lawsuit arises out of actions taken by the Sri Lankan military against the Tamil ethnic minority population in Sri Lanka during the years 2008 and 2009. As alleged in the

Complaint, during this period the Sri Lankan government undertook a campaign of shelling unarmed civilians in Tamil-populated areas and engaging in torture and extrajudicial killing of members of the Tamil militant group, the Liberation Tigers of Tamil Eelam ("LTTE"). (Complaint, pp. 2-3.)

Defendant Shavendra Silva ("Silva") is a Sri Lankan Army general who served as the commander of the 58th Division of the Sri Lankan Army. He is also presently Sri Lanka's Deputy Permanent Representative to the United Nations. Plaintiffs allege that Silva "exercised command and control over, conspired with, ratified, and/or aided and abetted subordinates in the armed forces or persons or groups acting in coordination with the armed forces or under their control to commit acts of extrajudicial killing, crimes against humanity, and the other wrongful acts alleged herein, and to cover up these abuses." (Complaint ¶ 20.)

Plaintiff Vathsala Devi is the widow of Thurairajasingham Devi ("Devi"), who was a member of the LTTE in Sri Lanka. On or about May 18, 2009, Devi surrendered to the Sri Lankan army, per the Sri Lankan government's instructions, and was then extrajudicially executed. (Complaint ¶ 26.) Devi negotiated his surrender and reported to a predetermined location to surrender into the custody of Silva. However, members of the Sri Lankan Army, acting under the command and control of Silva, tortured and killed him. (Complaint ¶ 10.)

Plaintiff Seetharam Sivam is the son of Siththar Sivam ("Sivam"), who was a retired postmaster living in the Sri Lankan village of Suthanphirapuram until his death in February 2009. Sivam's home was shelled by the Sri Lankan military on February 3, 2009, and Sivam suffered a severe leg injury as a result. (Complaint ¶¶ 41, 42.) While Sivam was awaiting amputation of his leg at Puthukkudiyiruppu Hospital, the Sri Lankan Army shelled the hospital, killing Sivam and nine others. (Complaint ¶¶ 44, 45.) Plaintiffs allege that Defendant Silva was

responsible for the treatment of civilians in the territory in which Sivam was wounded and killed, and that he was responsible for ensuring that Sri Lankan forces in that territory complied with international law governing the conduct of warfare. (Complaint ¶ 47.)

Plaintiffs assert four claims for relief against Silva: (1) torture; (2) cruel, inhuman, or degrading treatment; (3) intentional infliction of emotional distress; and (4) wrongful death/extrajudicial killing. The first and fourth claims are alleged to be actionable under the Alien Tort Claims Act, 28 U.S.C. § 1350, the Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) (codified at 28 U.S.C. § 1350 note), "the common law of the United States," and "the laws of New York." (Complaint ¶¶ 54, 68.) The second claim is alleged to be actionable under "customary international law, the common law of the United States, and the laws of New York." (Complaint ¶ 57.) The third claim is alleged to be actionable under "the laws of New York and the United States." (Complaint ¶ 62.) Plaintiffs seek compensatory and punitive damages, injunctive relief, declaratory relief, and attorney's fees.

### B. Procedural Background

The complaint was filed on September 23, 2011. On September 23 and September 27, 2011, Plaintiffs' agent purported to serve Silva with the summons and complaint at Silva's private residence in New York, New York. On October 14, 2011, counsel for Silva submitted a letter to the Court requesting the immediate dismissal of the lawsuit on the ground of diplomatic immunity pursuant to 22 U.S.C. § 254d. (Dkt. No. 5.) On October 19, 2011, counsel for Silva requested that Silva's October 14, 2011 letter be treated as a motion to dismiss should the Court require further briefing. (Dkt. No. 6.) On October 24, 2011, the Court directed that Silva's October 14 letter be treated as a motion to dismiss this action, and set a briefing schedule on that motion. (*Id.*) The motion is fully briefed.

**II.     Discussion**

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In considering a motion to dismiss based on the lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint"; however, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

Silva contends that dismissal of this action is mandated by federal statute and the Vienna Convention on Diplomatic Relations because he is a currently serving, accredited diplomat entitled to immunity from civil jurisdiction in the United States. The pertinent federal statute, the Diplomatic Relations Act of 1978, provides:

> Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . or under any other laws extending diplomatic privileges and immunities, shall be dismissed. Such immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure.

22 U.S.C. § 254d.

That statute gives effect to the Vienna Convention on Diplomatic Relations ("Vienna Convention"), an international treaty that has been ratified by 186 countries and entered into force for the United States in 1972. Article 31 of the Vienna Convention provides as follows:

> A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State. He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of:
>
> (a)  a real action relating to private immovable property situated in the territory of the receiving State, unless he holds it on behalf of the sending State for the purposes of the mission;

    (b)  an action relating to succession in which the diplomatic agent is involved as an executor, administrator, heir or legatee as a private person and not on behalf of the sending State;

    (c)  an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions.

23 U.S.T. 3227, 500 U.N.T.S. 95.  None of the three exceptions set forth in Article 31 applies to the allegations in the Complaint, and Plaintiffs do not argue otherwise.

    The Second Circuit has recognized that under the Vienna Convention, "current diplomatic envoys enjoy absolute immunity from civil and criminal process."  *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir.), *cert. denied*, 131 S. Ct. 151 (2010); *see also Tachiona v. Mugabe*, 386 F.3d 205, 216 (2d Cir. 2004) ("With limited exceptions, [the Vienna Convention] broadly immunizes diplomatic representatives from the civil jurisdiction of the United States."). The purpose of diplomatic immunity, as stated in the Preamble to the Vienna Convention, "is not to benefit individuals but to ensure the efficient performance of the functions of diplomatic missions as representing States."  23 U.S.T. 3227, 500 U.N.T.S. 95, Preamble, cl. 4.

    The question, then, is whether Silva is a "diplomatic agent" for purposes of the Vienna Convention who is "entitled to immunity" under the Diplomatic Relations Act.

### A.

    It is undisputed that Silva is currently the Deputy Permanent Representative of Sri Lanka to the United Nations.  His diplomatic credentials have been formally recognized by the United States, as evidenced by a Diplomatic Note executed on October 3, 2011, by Russell F. Graham, Minister Counselor for Host Country Affairs of the United States Mission to the United Nations. That Diplomatic Note certifies (1) that Silva is "Ambassador, Deputy Permanent Representative" of the Sri Lankan Mission to the United Nations; (2) that, as such, he is "entitled to the same

privileges and immunities in the United States as the United States accords to diplomatic envoys who are accredited to it"; and (3) that "[s]uch diplomatic immunity is defined by the [Vienna Convention]." (Defendant's Motion to Dismiss, Ex. A.)

Although Plaintiffs do not dispute the authenticity of the Diplomatic Note, they argue that the Court should "accord no deference" to the Diplomatic Note or to the views of the United States Department of State. It is true that in some other cases (but not in this case), the United States has requested dismissal on the basis of diplomatic immunity by appearing in the action through the Department of Justice and filing a formal suggestion of immunity pursuant to 28 U.S.C. § 517. *See, e.g.*, *Brzak v. United Nations*, 551 F. Supp. 313, 316 (S.D.N.Y.2008), *aff'd*, 597 F.3d 107 (2d Cir.), *cert. denied*, 131 S. Ct. 151 (2010). However, the Diplomatic Relations Act provides that "immunity may be established upon motion or suggestion *by or on behalf of the individual* . . . ," 22 U.S.C. § 254d (emphasis added), and there is no rule requiring a filing in the case by the United States Government. At least where the basis for diplomatic immunity is clearly established, there is no need for a formal suggestion of immunity by the United States.

Here, the proposition that Silva is entitled to full diplomatic immunity as a U.N. ambassador is supported not only by the State Department's Diplomatic Note, but by governing legal authority. In *Tachiona v. United States*, 386 F.3d 205 (2004), the Second Circuit held that diplomats accredited to the United Nations are accorded the same diplomatic immunity as diplomats accredited to the United States. In that case, Zimbabwe President Robert Mugabe had been accredited to attend the United Nations as a temporary U.N. representative. The court held that he was entitled to full diplomatic immunity under the Vienna Convention and the Convention on Privileges and Immunities of the United Nations ("CPIUN").[1] *Id.* at 216-20. The

---

[1] Feb. 13, 1946, 21 U.S.T. 1418, 1 U.N.T.S. 15 (entered into force with respect to the United States April 29, 1970). Section 11(g) of the CPIUN provides that "[r]epresentatives of [U.N.] Members to the principal and subsidiary

6

court's conclusion applies *a fortiori* to permanent U.N. representatives such as Silva. Indeed, the court recognized that "resident" U.N. representatives are clearly accorded full diplomatic immunity pursuant to the U.N. Headquarters Agreement.[2]  *Id.* at 217 n.6; *see also Brzak*, 597 F.3d at 113 ("CPIUN is a self-executing treaty" that is "binding on American courts").

Accordingly, Silva is a diplomatic agent who is presumptively entitled to immunity under the Vienna Convention and to dismissal under the Diplomatic Relations Act.

**B.**

Plaintiffs also challenge the scope of diplomatic immunity, arguing that even if it applies to Silva generally, it should not be interpreted to extend to (1) acts committed prior to Silva's diplomatic mission, or (2) acts in violation of international "*jus cogens*" norms such as torture and extrajudicial killing.

Nothing in the language of the Diplomatic Relations Act or of the governing treaties supports such categorical exceptions to the scope of diplomatic immunity. Rather, the Vienna Convention – which describes the scope of the immunity made effective by the Diplomatic Relations Act, the CPIUN, and the U.N. Headquarters Agreement – simply provides that a diplomatic envoy "*shall also enjoy immunity from [the receiving State's] civil and administrative jurisdiction*" (with three exceptions that are inapplicable here).

Nor does there appear to be any governing authority supporting such judicially created exceptions. To the contrary, the Second Circuit's decision in *Tachiona* is inconsistent with

---

organs of the [U.N.] . . . shall, while exercising their functions and during their journey to and from the place of meeting, enjoy . . . [the] privileges, immunities and facilities not inconsistent with the foregoing as diplomatic envoys enjoy . . . ."

[2] Agreement Between the United Nations and the United States Regarding the Headquarters of the United Nations, June 26, 1947, 61 Stat. 3416, 11 U.N.T.S. 11 (entered into force Oct. 21, 1947). Article V, Section 15 of that Agreement provides that "[e]very person designated by a Member . . . as a resident representative with the rank of ambassador or minister plenipotentiary . . . shall, whether residing inside or outside the headquarters district, be entitled in the territory of the United States to the same privileges and immunities, subject to corresponding conditions and obligations, as it accords to diplomatic envoys accredited to it."

Plaintiffs' interpretation: the court upheld the assertion of diplomatic immunity for Mugabe even though the lawsuit (1) "relate[d] to his activities in Zimbabwe" before the diplomatic mission, 386 F.3d at 220, and (2) included allegations of torture and execution, *id.* at 209. Similarly, in *Aidi v. Yaron*, 672 F. Supp. 516 (D.D.C. 1987), the plaintiffs sought to bring suit against an Israeli diplomat stationed in the United States who was alleged to have participated in massacres at refugee camps in Beirut, Lebanon. The court held that he was entitled to immunity under the Vienna Convention, notwithstanding the severity of the allegations. *Id.* at 518-19.[3]

Plaintiffs argue that the acts alleged in this case – torture and extrajudicial killings – are prohibited by *jus cogens* norms of international law. "*Jus cogens* norms are peremptory norms of international law which enjoy the highest status in international law and prevail over both customary international law and treaties." *Sabbithi v. Al Saleh*, 605 F. Supp. 2d 122, 129 (D.D.C. 2009). Accordingly, Plaintiffs argue, the Diplomatic Relations Act and the Vienna Convention should not be interpreted to immunize such acts.

No United States court has recognized a *jus cogens* exception to diplomatic immunity from its civil jurisdiction, and this Court declines to do so. First, assuming *arguendo* that treaty provisions must comply with *jus cogens* norms, just as they must adhere to constitutional limitations, there is no strict conflict between the Vienna Convention and *jus cogens* norms, because nothing in the Vienna Convention authorizes any practice that violates any such norm. That a violation of a *jus cogens* norm is alleged does not mandate a particular civil tort remedy in a United States court in derogation of diplomatic immunity. *Cf.* Hazel Fox, *The Law of State Immunity* 525 (2002) ("State immunity is a procedural rule going to the jurisdiction of a national

---

[3] The court expressed doubt that customs of international law established an additional exception to the Vienna Convention for "international crimes," but concluded that, even they did so, such an exception would not apply to a civil case in federal court as opposed to an international criminal tribunal. 672 F. Supp. at 518-19 & nn. 3-4.

8

court.  It does not go to substantive law; it does not contradict a prohibition contained in a *jus cogens* norm but merely diverts any breach of it to a different method of settlement.").

Moreover, the United States has taken the position that "there is no *jus cogens* exception to diplomatic immunity," and that "there is no[] evidence that the international community has come to recognize a *jus cogens* exception to diplomatic immunity."  *Sabbithi*, 605 F. Supp. 2d at 129 (quoting United States Statement of Interest in *Sabbithi v. Al Saleh* ("*Sabbithi* Statement"), at 20).  The interpretation of the United States Government is entitled to "'great weight,'" and is "also supported by authority and sound reasoning."  *Tachiona*, 386 F.3d at 223 (quoting *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185 (1982)).  As the Government has pointed out, a deviation from the international consensus on the broad scope of diplomatic immunity from the jurisdiction of United States courts "would create an acute risk of reciprocation by other States, potentially subjecting U.S. diplomats to controversial litigation in foreign jurisdictions."  *Sabbithi* Statement at 21.

**III.    Conclusion**

Notwithstanding the gravity of the allegations made by the plaintiffs in this case, the diplomatic immunity mandated by 22 U.S.C. § 254d precludes this Court from considering the merits of their claims against Silva, at least while he is cloaked with immunity as a United Nations representative.  The purpose of that immunity "is not to cover up heinous deeds from coming to the light of day, or to protect a nation's leaders from accountability for their acts," *Tachiona v. Mugabe*, 169 F. Supp. 2d 259, 317 (S.D.N.Y. 2001), *aff'd in relevant part*, 386 F.3d 205 (2d Cir. 2004), but rather to protect the interests of comity and diplomacy among nations, and, not incidentally, to ensure the protection of our own diplomats abroad.

Because Silva is entitled to immunity under 22 U.S.C. § 254d, this Court lacks subject matter jurisdiction over the claims against him. Accordingly, Silva's motion to dismiss is GRANTED, and the complaint is dismissed for lack of subject matter jurisdiction.

SO ORDERED.

Dated: New York, New York
       February 8, 2012

_____
J. PAUL OETKEN
United States District Judge